IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NED CHARLES MCNULTY, II,

                Plaintiff,

  v.

BEN HANKO,

                Defendant.

OPINION and ORDER

23-cv-676-jdp

---

      Plaintiff Ned Charles McNulty, II, proceeding without counsel, is a patient at the Sand Ridge Secure Treatment Center. McNulty alleges that defendant Ben Hanko, an advanced psychiatric care technician at Sand Ridge, stood by while McNulty choked on food for several minutes. McNulty proceeds on a Fourteenth Amendment claim.

      Hanko moves for summary judgment. Dkt. 18. The undisputed facts show that Hanko monitored McNulty while he ate and promptly assessed him when he started to choke, allowing him to clear the obstruction by coughing. McNulty cleared his airway before Hanko performed the Heimlich maneuver, but Hanko's less aggressive initial response was appropriate because McNulty's airway was only partially obstructed. Hanko's response to the choking incident was objectively reasonable, so I will grant the motion.

UNDISPUTED FACTS

      McNulty did not respond to Hanko's motion for summary judgment. So I will accept Hanko's proposed facts as undisputed. *See Allen-Noll v. Madison Area Tech. Coll.*, 969 F.3d 343, 349 (7th Cir. 2020) (stating that all litigants must comply with the court's orders and rules);

*Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[A] failure to respond by the nonmovant as mandated by the local rules results in an admission.").

With that background, the following facts are undisputed.

McNulty is a patient at the Sand Ridge Secure Treatment Center. Hanko works at Sand Ridge as an advanced psychiatric care technician. Hanko has CPR certification and knows how to perform the Heimlich maneuver.

On December 18, 2022, McNulty was monitoring the day room while patients, including McNulty, were eating dinner. McNulty got up from his seat and walked toward Hanko, who heard McNulty wheeze as he tried to walk past him and up the stairs. Hanko stopped McNulty and performed a medical assessment. McNulty continued to wheeze and had his right hand on his throat. Hanko asked McNulty if he was okay and monitored him as he tried to clear his airway by coughing. Because McNulty was coughing and could speak, Hanko believed that his airway was only partially obstructed. Hanko had had previous interactions with McNulty in which he had struggled to swallow his food, so Hanko thought that it would take McNulty a couple of minutes to swallow food if he was choking. Eventually, Hanko positioned himself to perform the Heimlich maneuver but, before he could begin, McNulty turned toward him and said, "It's down," referring to the food on which he had been choking.

McNulty walked back to his seat to finish his dinner. Hanko told him that he should take smaller bites and drinks between them. McNulty indicated his agreement, and he declined Hanko's offer for medical staff to assess him. After McNulty finished his meal, Hanko checked on him and told him that he should get staff's attention immediately if he had another choking incident instead of trying to go to his room. McNulty agreed and went to his room. Nursing staff spoke with McNulty after Hanko told them about the choking incident. The next day,

nurse Jennifer Sampson saw McNulty, who told Sampson that the choking incident "wasn't bad. I got it down."

## ANALYSIS

The Fourteenth Amendment governs McNulty's claim alleging an inadequate response to his choking. *See McCann v. Ogle Cty., Ill.*, 909 F.3d 881, 886 (7th Cir. 2018). To prevail, McNulty must show that: (1) Hanko acted intentionally, knowingly, or recklessly when he considered the consequences of his actions; and (2) Hanko's actions were objectively unreasonable. The second element is dispositive.

The undisputed facts show that Hanko responded to the choking incident in an objectively reasonable manner. Hanko assessed McNulty when he thought he might be choking and prepared to perform the Heimlich maneuver. McNulty cleared the food on his own before Hanko could take that step, indicating that his more cautious initial response was appropriate. After the choking incident, Hanko continued to monitor and educate McNulty.

I will grant summary judgment to Hanko.

ORDER

IT IS ORDERED that:

1. Defendant Ben Hanko's motion for summary judgment, Dkt. 18, is GRANTED.

2. The clerk is directed to enter judgment and close the case.

Entered April 22, 2025.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge